IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN PROMOTIONAL EVENTS, INC. - NORTHWEST dba TNT FIREWORKS, | CIVIL NO. 11-00242 LEK-RLP |
| Plaintiff, | |
| vs. | |
| CITY AND COUNTY OF HONOLULU, a municipal corporation, ET AL., | |
| Defendants. | |

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff American Promotional Events, Inc. - Northwest, doing business as TNT Fireworks', ("Plaintiff" or "TNT") Motion for Preliminary Injunction ("Motion"), filed on April 11, 2011. Defendant City and County of Honolulu ("Defendant" or "City") filed its memorandum in opposition on May 23, 2011, Plaintiff filed its supplemental memorandum in support on May 31, 2011, and Defendant filed its supplemental memorandum in opposition on June 6, 2011. This matter came on for hearing on June 13, 2011. Appearing on behalf of Plaintiff were Thomas Berger, Esq., and Robert Chapman, Esq., and appearing on behalf of Defendant were Duane Pang, Esq., Elisabeth Contrades, Esq., and Kamilla Chan, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiff's Motion is HEREBY DENIED

because, in order for the Court to issue a preliminary injunction, Plaintiff must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest, and this Court cannot conclude that Plaintiff has met its burden of proof for the reasons set forth below.

## BACKGROUND

Plaintiff seeks a preliminary injunction that enjoins Defendant:

> from enforcing against Plaintiff the provisions, penalties or forfeiture powers set forth by the Hawaii Revised Statutes in Chapter 132D ("Fireworks Control Law") and Hawaii Revised Ordinances, Chapter 20, article _, titled "Regulation of Fireworks", see CCH Ordinance 10-25 (January 2, 2011), until a final hearing and determination of the merits in the above-entitled action.

[Motion at 7.]

Effective January 2, 2011, the Honolulu City Council amended the City Fire Code, adding a new Section 6 ("Fireworks Ordinance"), entitled "Regulation of Fireworks."  It states, in pertinent part:

> Sec. 20-6.2 Prohibitions; Permitted uses.
> Except as otherwise provided in this article:
>> (a) It shall be unlawful for any person to possess, use, explode or cause to explode any consumer fireworks[1] within the city.

---

[1] The Fireworks Ordinance defines "consumer fireworks" as
(continued...)

(b) It shall be unlawful for any person to possess, use, explode or cause to explode any aerial device, articles pyrotechnic or display fireworks within the city.

(c) It shall be unlawful for any person to import, store, sell, keep or offer for sale, expose for sale any fireworks within the city.

Sec. 20-6.3 Exceptions.

The prohibitions in Section 20-6.2 shall not apply to:

(a) The import, storage, sale and use by a person having obtained a license or permit for display fireworks pursuant to Sections 20-6.4 and 20-6.12;

(b) The import, storage, sale and use by a person having obtained a license or permit for firecrackers pursuant to Sections 20-6.4 and 20-6.13;

---

[1](...continued)

follows:

"Consumer fireworks" means any fireworks designed primarily for retail sale to the public during authorized dates and times, and produces visible or audible effects by combustion, and that is designed to remain on or near the ground and, while stationary or spinning rapidly on or near the ground, emits smoke, a shower of colored sparks, whistling effects, flitter sparks, or balls of colored sparks, and includes combination items that contain one or more of these effects. "Consumer fireworks" include firecrackers, snakes, sparklers, fountains, and cylindrical or cone fountains that emit effects up to a height not greater than 12 feet above the ground, illuminating torches, bamboo cannons, whistles, toy smoke devices, wheels, and ground spinners that when ignited remain within a circle with a radius of 12 feet as measured from the point where the item was placed and ignited, novelty or trick items, combination items, paperless firecrackers, and other fireworks of like construction that are designed to produce the same or similar effects.

Revised Ordinances of Honolulu ("ROH") § 20-6.1.

3

(c) The use of flares, noisemakers, or
signals for warning, pest control, or
illumination purposes by the police and fire
departments, utility companies,
transportation agencies, and other
governmental or private agencies or persons,
including agricultural operations, in
connection with emergencies, their duties, or
business; or
(d) The sale or use of blank cartridges for a
show or theater, or for signal, commercial,
or institutional purposes in athletics or
sports.
. . . .
Sec. 20-6.9 Penalty.
(a) Any person violating Section 20-6.2(a)
shall be sentenced to a fine of not less than
$200 and not more than $1,000 or by
imprisonment of not more than 30 days or by
both such fine and imprisonment.
(b) Any person violating any provision of
this article, other than Section 20-6.2(a)
shall be sentenced to a fine of not less than
$250 and not more than $2,000 or by
imprisonment of not more than one year or by
both such fine and imprisonment.
(c) In addition to the penalties provided in
subsections (a) and (b), if the person is
licensed to sell fireworks, the court may, in
addition to the foregoing penalties, revoke
or suspend such license.  No license shall be
issued to any person whose license has been
so revoked or suspended until the expiration
of two years after such revocation or
suspension.

Revised Ordinances of Honolulu ("ROH") §§ 20-6.2, -6.3, -6.9.

I.   **Plaintiff's Complaint**

The Complaint alleges jurisdiction pursuant to 28

U.S.C. §§ 2201-2202, the Declaratory Judgment Act, and alleges

violations of 42 U.S.C. § 1983, Article I, Section 8, clause 3 of

the Constitution of the United States of America ("Commerce

Clause"), and Articles VIII ("Local Government") and I, Section 5 ("Due Process") of the Constitution of the State of Hawai'i. [Complaint at ¶ 1.]  The Complaint alleges that the City's restrictions on the sale of consumer fireworks expose Plaintiff to fines, criminal liability and other penalties.

### A.   **Plaintiff's Distribution Operations**

Plaintiff is engaged in the business of importing and wholesaling "consumer fireworks and fire crackers," and does not import or wholesale "display fireworks."  It runs its import and distribution operations from a warehouse located in Honolulu. [Id. at ¶ 22.]  Plaintiff claims that it has invested over $750,000 to improve the warehouse in compliance with State and County fire and building codes.  [Id. at ¶ 23.]  The warehouse is Plaintiff's central distribution facility; consumer fireworks are delivered to the warehouse, where they are unpackaged and stored. [Id. at ¶ 24.]  Plaintiff also has a firecracker inventory at the warehouse for sales statewide.  [Id. at ¶ 31.]

Plaintiff orders consumer fireworks in bulk from international manufacturers throughout the year, and claims that it is "impossible for TNT Fireworks to directly ship these orders from international manufacturers to the County of Hawaii, the County of Maui, and County of Kauai ("Neighbor Islands") without traveling through the port of Honolulu[.]"  [Id. at ¶ 25.]  The Complaint alleges that Plaintiff is the distributor for over one-

hundred retail clients on the Neighbor Islands, where consumer fireworks are legal, with some restrictions.  According to the Complaint, Neighbor Island retailers will not accept delivery of fireworks from Plaintiff until a few days before fireworks selling season, therefore, a centralized warehouse in Honolulu is necessary for distribution.  [Id. at ¶¶ 26-28.]  The Complaint alleges that: "The cost or burden for TNT Fireworks to open a distribution warehouse for consumer fireworks on the Neighbor Islands is prohibitively expensive, and/or impossible given the 'hub and spoke' model of the Hawaii economy, and/or the requirements of the county and state fire codes."  [Id. at ¶ 32.]

     B.    **License Application Process**

        Plaintiff alleges that, on or before March 31, 2010, the Honolulu Fire Department ("HFD") granted it licences "to import, wholesale, and store fireworks product intended for sale in the State of Hawaii" at its warehouse.  According to the Complaint, on November 10, 2010, HFD notified Plaintiff that valid licences for import, wholesale, or storage of consumer fireworks would be honored through March 11, 2011.  [Id. at ¶¶ 33-34.]

        On March 15, 2011, Plaintiff applied to HFD for two permits for "Proposed Cultural Use of Consumer Fireworks," and the permits were approved that same day.  On March 16, 2011, Plaintiff applied for three licences to import, wholesale, and

store consumer fireworks in the State ("License Applications"),

listing the storage facility as its Honolulu warehouse.  [Id. at

¶¶ 35-36.]  Plaintiff received a response from HFD on April 5,

2011, stating that:

> "Ordinance 10-25 does not permit the importation,
> storage, and/or sale of any fireworks other than
> display fireworks or firecrackers as defined
> therein."  Further, "Honolulu Fire Department's
> records indicate that American Promotional Events
> NW, Inc.'s (dba TNT Fireworks) license to store
> fireworks expire on March 31, 2011."

[Id. at ¶ 37.]

### C. **Plaintiff's Causes of Action**

The Complaint alleges three claims for relief: (1)

violation of 42 U.S.C. § 1983 and the Commerce Clause; (2)

invalid attempt by the City to regulate matters of statewide

concern, in violation of Article VIII of the Hawai'i

Constitution; and (3) vague and overbroad restrictions that

violate due process of law under the Hawai'i Constitution.

## II. **Plaintiff's Motion**

Plaintiff's Motion repeats the allegations in the

Complaint and seeks a preliminary injunction preventing the City

from enforcing the Fireworks Ordinance.  Plaintiff explains that

Honolulu is the "hub" for the Hawaiian shipping industry.  [Mem.

in Supp. of Motion, Decl. of Jerald Farley ("Farley Decl.), at

¶ 5; Exh. 1 (12/13/10 Shipping Industry Presentation).]  Goods

arriving into Hawai'i travel to the Honolulu "hub," before

continuing on to the Neighbor Islands, or "spokes."  [Id.]

According to Plaintiff, the "consumer fireworks business model is unique.  [TNT] spends eleven (11) months of the year preparing for a selling season of two (2) to three (3) weeks.  Retail orders are placed with [TNT] throughout the year.  Likewise, orders are placed with the manufacturers for shipment throughout the year."  [Farley Decl. at ¶ 14.]  With respect to the distribution and shipment of fireworks, Plaintiff asserts that:

> 15.  When consumer fireworks product arrives in Honolulu it needs to be unpacked and then organized before it can be sent to the neighbor island retailers.
> 16.  At the end of the selling season, [TNT] takes unsold merchandise back from its customers.  For [TNT] customers on the neighbor islands, the unsold merchandise is consolidated into containers and shipped back to the Warehouse in Honolulu.  Upon arriving at the Warehouse, the containers are unloaded and the returned merchandise is sorted and counted.  [TNT] staff then spends months consolidating merchandise that has been returned and repackages all similar merchandise into US DOT approved cartons.  The product is organized in the Warehouse in anticipation of the next selling season.
> . . . .
> 18.  It takes from the end of the Fourth of July selling season until September or early October to complete the sorting, counting, billing, repackaging and Warehouse rearranging process.  From the end of the New Year's Eve selling season it takes [TNT] permanent and temporary staff until mid-April and sometimes early May to complete this process.

[Id. at ¶¶ 15-16, 18.]  In order to operate this distribution system, TNT spent $750,000 to improve its Honolulu warehouse.

[Id. at ¶ 11.]

> 12.  The improvements included altering all
> exterior walls to 50 feet or less from any other
> structure, property line or imputed property line
> so that they met requirements for a 4-hour rated
> fire wall and significant upgrades to the roof,
> electrical, mechanical, air conditioning, fire
> alarm and security systems as well as other
> significant improvements.
> 13.  After the enactment of the Honolulu
> Fireworks Ordinance, I traveled to the Island of
> Hawaii on multiple occasions in an effort to find
> a building that would meet all applicable code
> requirements or could be modified to meet all
> applicable code requirements.  No such building
> was available for rent.  Further, no such building
> may exist in the State of Hawaii other than Oahu.

[Id. ¶¶ 12-13.]  According to Plaintiff, the value of its current

retail consumer fireworks inventory stored at the Honolulu

Warehouse exceeds $800,000.  [Id. at ¶ 20.]  Plaintiff argues

that the cost of opening a distribution warehouse on the Neighbor

Islands is prohibitively expensive and not practical given the

"hub and spoke" shipping economy.  [Mem. in Supp. of Motion at

7.]

On March 16, 2011, Plaintiff applied to the HFD for

three licenses to import, wholesale, and store fireworks, listing

the Honolulu warehouse as the storage facility and including

checks to the City totaling $6,000.  [Id. at 9.]  According to

Plaintiff, "Chuck Perry of the Honolulu Fire Department told

[a TNT employee] that no licenses of any kind would be processed

until the Department had determined that only firecrackers

remained in the warehouse."  [Farley Decl. at ¶ 8.]  By letter

9

dated April 1, 2011, HFD informed Plaintiff that "Ordinance 10-25 does not permit the importation, storage, and/or sale of any fireworks other than display fireworks or firecrackers as defined therein." [Farley Decl., Exh. 7 (4/1/11 Letter from Fire Chief K. Silva).]  On April 5, 2011, the City and HFD informed Plaintiff that "they could provide 'no guarantee' that the provisions, penalty, and forfeiture powers set forth by the Fireworks Control Law or the Honolulu Fireworks Ordinance would not be applied to TNT during the pendency of the License Application process[.]" [Motion, Decl. of Thomas Berger ("Berger Decl."), at ¶ 7.]

Plaintiff argues that the: (1) Honolulu Fireworks Ordinance, Revised Ordinances of Honolulu ("ROH") 10-25, § 20-6; (2) City's "Official Policy" that the import and storage of consumer fireworks in Honolulu violates the Fireworks Ordinance; and (3) City's "Decision" to not grant TNT's License Applications because the License Applications do not comply with the Fireworks Ordinance and Official policy, each violate its rights under the federal and state Constitutions.

A.   **The Commerce Clause**

Plaintiff argues that the City's Fireworks Ordinance, Official Policy, and Decision violate the Commerce Clause of the United States Constitution because they directly regulate and discriminate against commerce. [Mem. in Supp. of Motion at 13.]

According to Plaintiff, the "practical effect" of the City's conduct is that "TNT cannot lawfully transport fireworks from outside the State of Hawaii to the Neighbor Islands." [Id. at 13-14.]  Plaintiff claims that, the HFD's decision not to approve the License Applications based on the Fireworks Ordinance and Official Policy "has the practical effect of quashing interstate commerce in lawful fireworks product between the U.S. Mainland, international manufacturers, and the Neighbor Islands." [Id. at 14.]

Plaintiff claims that there is "no conceivable fact pattern under which a fireworks importer and wholesaler in the State of Hawaii can operate a statewide business without violating," the City's rules.  [Id.]  Further, it argues that it is "impossible for TNT to transport firework product to the neighbor islands efficiently or economically by plane or by truck.  The transportation of firework product in bulk by plane is dangerous, costly, and is strictly regulated by the federal government." [Id. at 14-15.]

Locating a distribution warehouse on the Neighbor Islands is "economically unfeasible," and would nonetheless violate the Fireworks Ordinance, according to Plaintiff.  For example, if TNT had a warehouse in Kauai or Maui county, the fireworks would still be imported from China to the State of Hawai'i via Honolulu, and once in Honolulu, TNT would be in

11

violation of the City's laws prohibiting the import and storage of consumer fireworks in Honolulu.  [Id. at 15-16.]  "Import" is defined in the Fireworks Ordinance to mean "to transport or attempt to transport fireworks into the city or to cause fireworks to be transported into the city," and therefore, the moment fireworks are "unloaded off a ship in Honolulu harbor the dockworker handing and transporting the product is in violation of the [City's] Official Fireworks Policies.  Likewise, the party that ordered the product is in violation of the [City's] Official Fireworks Policies regardless of the intended destination of the product."  [Id. at 16.]

Under the balancing test set forth in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970), Plaintiff argues that "nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"  [Id. at 17 (quoting Oregon Waste Systems, Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994)).]  Plaintiff discusses the weight and nature of the local regulatory concern in light of the burden on interstate commerce, and argues that the City's policies substantially affect and burden its interstate business operations.  Plaintiff asserts that the City's legitimate public safety concerns do not justify the Fireworks Ordinance, and creates public safety anomalies.  For

example, if retailers from Neighbor Islands are prohibited from

returning unsold consumer fireworks to a Honolulu warehouse, then

there is an increased chance the unsold products will enter the

Neighbor Islands black-market from unauthorized leakage by

employees.  Plaintiff argues the Fireworks Ordinance effectively

destroys the process by which Plaintiff consolidates unused

fireworks for the next selling season, by making it illegal for

the retailers to send the unsold merchandise back to Honolulu.

[Id. at 17-18.]

### B.   Article VIII of the Hawai'i Constitution

Plaintiff next argues that the City's fireworks laws

violate the Constitution of the State of Hawai'i, Article VIII,

§§ 1, 6, which set forth the powers of political subdivisions

within the State.  Article VIII, section 1 states: "The

legislature shall create counties, and may create other political

subdivisions within the State, and provide for the government

thereof.  Each political subdivision shall have and exercise such

powers as shall be conferred under general laws."  Article VIII,

section 6 states: "This article shall not limit the power of the

legislature to enact laws of statewide concern."

Plaintiff argues that the Fireworks Ordinance exceeds

the powers conferred to the counties by general law.  Plaintiff

states that, when the Hawai'i Legislature enacted "SB No. 1059 in

2009, which provides power to the county to enact 'ordinances

13

that are more stringent in the control or prohibition of fireworks than this chapter[,]" it did not contemplate providing counties with power to regulate the import, storage, and wholesaling of fireworks in the State.  [Id. at 20.]  Plaintiff contends that, because the power to regulate the import, storage, and wholesaling was not expressly provided to the counties, that the City's exercise of this power is not valid.  [Id.]

Plaintiff describes the City's duty to administer Chapter 132D, Haw. Rev. Stat., as "ministerial" to the extent it issues import, storage, and wholesaling licenses to applicants. Plaintiff argues that there is no valid reason for the City to deny its License Applications submitted in March 2011.  Further, Plaintiff argues that the Legislature did not intend for county ordinances enacted pursuant to Haw. Rev. Stat. § 132D-17.5 to abrogate the ministerial administrative duty imposed on the City. [Id. at 21.]

Plaintiff also argues that, because the regulation of commerce between the different counties is a matter of statewide concern, the City cannot lawfully create restrictions on consumer fireworks that interfere with the flow of commerce between the Hawaiian Islands.  Therefore, Plaintiff claims that the Fireworks Ordinance, which prohibits the import and storage of consumer fireworks on Oahu, is void on its face because it effectively regulates commerce between the islands, a matter of statewide

concern.  [Id. at 21-22.]

C. **Vague and Overbroad Prohibitions**

Finally, Plaintiff argues that the City's policies amount to continuing violations of rights that are guaranteed by Article I, § 5 of the Hawaii Constitution.

Plaintiff argues the Fireworks Ordinance is vague because it creates a standard that is internally inconsistent and confusing, such that a person of ordinary intelligence is left with the impression that their conduct may be lawful when, in fact, it is not.  For example, Plaintiff asserts that the exceptions to the law are effectively circular, and therefore confusing, and that a person may believe they are protected from arrest or prosecution by securing a permit, but may still be exposed to inconsistent or arbitrary enforcement.  It also claims that the exceptions are ambiguous and that the HFD or Police Department cannot enforce the Fireworks Ordinance in a manner that is not arbitrary and discriminatory.  [Id. at 24-25.]

D. **Irreparable Harm and Balance of Equities**

Plaintiff states that the viability of its statewide business operation in fireworks importing and wholesaling is threatened.  It claims its constitutional rights are violated and the City's conduct exposes Plaintiff to significant and continuing injury, including business risk and disruption of its operations.  Plaintiff also warns that it may be exposed to

15

misdemeanor criminal liability and other penalties because HFD has not granted its License Applications.

Plaintiff also argues that the balance of equities tips in its favor because of the importance of protecting its constitutional right to engage in interstate commerce.  It also argues that Neighbor Island retailers are expecting fireworks for the Fourth of July to be delivered on time, and that customers statewide expect to be able to use firecrackers during the lawful fireworks season and for cultural purposes.  [Id. at 28-29.]

### III. **The City's Memorandum in Opposition**

The City filed its memorandum in opposition on May 23, 2011.  The City argues that Plaintiff is not entitled to a preliminary injunction because: it is unlikely to succeed on the merits of any of its three causes of action; it will not suffer irreparable harm; the balance of equities weighs in the City's favor; and public interest and safety require the Court to deny Plaintiff's request.

The City discusses the legislative history behind the consumer fireworks ban on Oahu.  On June 22, 2010, Act 170 amended Haw. Rev. Stat. Chapter 132D ("Fireworks Control Law") "by removing the prohibitions on the Counties' authority to regulate fireworks." [Mem. in Opp. at 2.]  The Act 170 legislative history includes the following language: "Your Committee on Conference believes that counties should have

16

sufficient latitude to enact their own ordinances that are at least as stringent as state law, including banning fireworks entirely.  This measure clarifies existing law to that effect." [Id. (quoting Conf. Comm. Rep. No. 71-10, SB1059 SD2, HD3, CD1).]

Shortly after Act 170 amended the State Fireworks Control Law, the City enacted Ordinance 10-25, which is the subject of this lawsuit.  According to the City, the difference between the State Fireworks Control Law and the Honolulu Fireworks Ordinance is that all consumer fireworks are prohibited within the City and County of Honolulu.  "Consumer fireworks are normally identified as those fireworks that are purchased, without a permit, at common retail outlets such as Longs, Costco, etc. . . . [and] include fireworks that emit smoke or shower of sparks including sparklers."  [Id. at 5.]

With respect to Plaintiff's License Applications, the City states that, on April 19, 2011, HFD issued Plaintiff three licenses to import, store, and wholesale fireworks. [Id., Decl. of Counsel, Exhs. G-1, G-2, G-3; Aff. of Socrates Bratakos ("Bratakos Aff."), at ¶¶ 5, 6, 8, 9.]  The three licenses each contain a handwritten note indicating "1.4g = firecrackers only." [Mem. in Supp., Decl. of Counsel, Exhs. G-1, G-2, G.]  The note is intended to remind Plaintiff "that ROH § 20-6.2 prohibits consumer fireworks within Honolulu County."  [Bratakos Aff. at ¶ 6.]

The City claims that the licenses issued to Plaintiff would be "recognized by the Neighbor Islands, allowing TNT Fireworks to import all types of 1.4G class of fireworks including consumer fireworks into the state destined for the Neighbor Islands." [Mem. in Opp. at 7-8.]  Further, "HFD is aware that some fireworks companies have import licenses issued by other Neighbor Islands with no storage facilities in Honolulu County.  HFD has never required a separate import license issued by Honolulu County for these fireworks, even though the fireworks may be transported through Honolulu County."  [Bratakos Aff. at ¶ 9.]  Charles Perry, HFD Fireworks Inspector, states that:

> 15.  As part of my duties and responsibilities of implementing the Firecracker Regulations, I have reviewed the licenses issued by HFD, and have observed that HFD has issued import, storage and wholesale licenses to two other entities with the same restrictions as those licenses issued to TNT Fireworks.
> 16.  I am also aware that two other fireworks companies, who previously had license to import, wholesale and store fireworks issued by HFD are now storing their consumer fireworks on the Big Island.
> 17.  I am also aware that there is at least one company that provides service of unloading, repackaging and reshipment fireworks and consumer fireworks to the Neighbor Islands.
> 18.  I have reviewed the Fire Codes for all of the Neighbor Islands, and none of the Neighbor Islands preclude the import or storage of consumer fireworks on their island.
> 19.  Under the provisions on HRS § 132D-8, HFD has recognized import licenses that are issued by the Neighbor Islands, and have not required separate import licenses issued by HFD whether or not the fireworks are shipped through Honolulu Harbor.

[Mem. in Opp., Aff. of Charles Perry ("Perry Aff.").]

### A.   The Merits of Plaintiff's Claims

#### 1.   The Commerce Clause

The City argues that Plaintiff cannot prevail on its Commerce Clause challenge because it has not met the "very high burden of proof" necessary to "establish that no set of circumstances exist under which [the Ordinance] would be valid. The fact that [the Ordinance] might operate unconstitutionally under some set of circumstances is insufficient to render it wholly invalid." [Mem. in Opp. at 10 (citing S.D. Meyers, Inc. v. City & County of San Francisco, 253 F.3d 461, 467 (9th Cir. 2001)).]

First, the City argues that the Fireworks Ordinance does not discriminate against interstate commerce, but rather, is neutral because the ban on consumer fireworks affects both in-state and out-of-state interests. [Id. at 12.]

Second, the City claims that Plaintiff reads the Fireworks Ordinance too broadly when it claims that ROH § 20-6.2(c) precludes consumer fireworks from even passing through Honolulu harbor. The City asserts that under the import license it issued to Plaintiff, "Plaintiff is permitted to import all types of 1.4G class of fireworks including consumer fireworks destined for the Neighbor Islands." [Id. at 14.]

Third, the City contests Plaintiff's claim that

19

consumer fireworks must be shipped to Honolulu.  Relying on the same Horizon Lines shipping presentation that Plaintiff cited in its memorandum in support, the City claims that "consumer fireworks can easily be shipped from out-of-state through Honolulu to the Neighbor Islands."  [Id. at 15.]  Further, the City asserts that the Fireworks Ordinance "cannot be reasonably read to prohibit the incidental transfer of consumer fireworks from Horizon's ship to a barge destined for the Neighbor Islands."  [Id.]  According to the City, HFD has recognized import licenses issued by Neighbor Islands, "and has not precluded the transportation of those fireworks through Honolulu Harbor, nor has HFD required a separate import license be obtained from Honolulu County."  [Id. at 15-16.]

Next, the City cites cases from the Fifth and Tenth Circuits holding that:

> the regulation of fireworks including total bans of fireworks within any city or state has been determined not to be in violation of the Commerce Clause.  Cohen v. Bredehoeft, 402 F.2d 61 (5th Cir. 1968) (upholding a total ban of fireworks within the City of Houston); PPC Enterprises, Inc. v. Texas City, Texas, 76 F. Supp. 2d 750 (S.D. Tex. 1999) (upholding a city ordinance prohibiting the sale, possession or use of fireworks within 5,000 feet of the City limits); Consigned Sales Co., Inc. v. Sanders, 543 F. Supp. 230 (W.D. Okla. 1982) (upholding an Oklahoma state statute prohibiting the mail-order sales of fireworks)."

[Id. at 16.]

The City argues that, although the Fireworks Ordinance

may require Plaintiff to alter its business operations, "such as storing consumer fireworks in another County where the use is legal[,]" such effects on private companies to do not violate the Commerce Clause.  [<u>Id.</u> at 19.]  Further, other than "inconvenience," the City argues that Plaintiff submits no evidence that unpacking and organizing consumer fireworks on another island interferes with interstate commerce.  [<u>Id.</u>]

### 2. **Local Government Authority to Regulate Fireworks**

The City next argues that the State has delegated to the counties the full authority to ban fireworks in Haw. Rev. Stat. § 132D-17.5, therefore, the City has not interfered with the State's control of regulating fireworks.  The City argues that its ban on consumer fireworks is valid under State law. [<u>Id.</u> at 21.]

### 3. **Vague and Overbroad**

The Fireworks Ordinance is clear and unambiguous that it "does not affect the shipping of consumer fireworks to Neighbor Islands[,]" argues the City.  [<u>Id.</u> at 22.]  The City argues that ROH § 20-6.2 "prohibits consumer fireworks in Honolulu County.  TNT Fireworks cannot bring consumer fireworks to its warehouse[.]"  [<u>Id.</u>]

### B. **Irreparable Harm**

Next, the City argues that Plaintiff will suffer no irreparable harm, because HFD has granted an import license and

the Fireworks Ordinance does not interfere with Plaintiff importing consumer fireworks to the Neighbor Islands.  The City also states that Plaintiff's expenditures associated with improving its Honolulu warehouse were incurred before the Fireworks Ordinance became effective.  [Id. at 23-24.]

### C.   Balance of Equities and Public Interest

The City contends that the balance of equities weighs in its favor because the burden on Plaintiff to obtain licenses and store consumer fireworks on the Neighbor Islands is minimal compared to the burden on HFD to monitor consumer fireworks stored at the Honolulu warehouse for shipment to and return from the Neighbor Islands.  That is, the City would not be able to confirm whether the consumer fireworks were actually delivered to Neighbor Island retailers if they were processed through the Honolulu warehouse.  [Id. at 24-25.]

With respect to the public interest, the City cites safety data showing that the majority of fireworks-related injuries occur on Oahu.  The elected City Council "determined that a total ban on consumer fireworks should be imposed."  [Id. at 26.]  The City argues that the public safety of its citizens "requires that consumer fireworks be stored and wholesaled in a County where such activities are permitted."  [Id.]

### IV.   Plaintiff's Supplemental Memorandum in Support

At a May 16, 2011 status conference, the Court

permitted Plaintiff to file a supplemental memorandum regarding

relevant events occurring after the filing of the Motion. [Dkt.

no. 11.] Plaintiff filed its supplemental memorandum in support

on May 31, 2011. The supplemental memorandum includes additional

information regarding Plaintiff's operations including the

following:

> 12. American Promotional Events, Inc., N.W.
> is the largest supplier of consumer fireworks to
> the various retailers in the State of Hawaii.
> Therefore a central warehouse in which its
> consumer fireworks products can be accumulated
> during those 46 weeks is critical and essential to
> the company's ability to pick and pack its
> customers' orders and ship them most efficiently
> and within the shortest possible number of days
> before the beginning of the selling season. Given
> the scale, size and complexity of its business and
> without a central warehouse close to the Port of
> Honolulu, the company could not operate
> efficiently and safely and probably would not be
> able to ensure compliance with all of the
> requirements imposed on it by all of the county
> fire and other officials.
> 13. Other smaller consumer fireworks
> importers or wholesalers may only have one or a
> few customers. They may be able to have a single
> container or a small number of containers brought
> in to the State of Hawaii and with no or only
> minimal handling-unloading, sorting, picking and
> packing of orders-and what in the industry is
> referred to as "drop ship" their orders to their
> very small number of customers within the narrow
> time frame imposed by Hawaii state law and
> county fire and other officials. This option is
> not available to American Promotional Events, Inc.
> N.W.
> 14. When the consumer fireworks product
> arrives, it is trucked to the facility to be
> unloaded. The cases are hand-stacked in the
> container to maximize the total available space.
> At our TNT Hawaii facility the cases are unloaded
> on to wooden pallets and separated based on the

item number and type of item shipped.

15.   All TNT items coming from China are shipped together and not separated.  Items such as non-regulated snaps and party-poppers that are allowed on all islands are shipped in the same container as fireworks items like fountains and assortments.  These items need to be separated for their designated customers.  At the time of unloading, the product is checked to see if the manifest matches actual amounts shipped.  Many times there are random samples take out by third-party testing agencies, such as AFSL for random sampling as well as other government agencies in China for testing.  These missing items get recorded and the package is repacked so that it is a complete case.

. . . .

21.   There are many restrictions placed on shipping consumer fireworks 1.4G UN 0336 in international, interstate and intrastate commerce. Due to requirements imposed by the different fire departments on the different islands, the amount of time that fireworks may be in a specific retail store varies.  If they keep them longer than this specified time, the fire department may say that the store has to be classified as a storage facility.  Storage facilities have different building and fire code requirements that most stores cannot meet.  So, American Promotional Events, Inc., N.W. works with the store management, the fire department and the shipping company to ensure "on-time" delivery so that the product can be placed in the store for no longer than the time allowed.  American Promotional Events, Inc., N.W. must precisely time the shipping of the product to the stores.

22.   Product is normally allowed to be in a store for one (1) week before the sales period. Product must be taken out of the store one (1) week after the sales period.  This Fourth of July season, American Promotional Events, Inc., N.W. will ship out the fireworks to the neighbor island stores during the week of June 20th and at the latest June 24th.

. . . .

25.   Because of the size and complexity of the operations of American Promotional Events, Inc., N.W. in Hawaii a warehouse on the island of

24

Oahu is essential.  The warehouse is located at 2720 Wai Wai Loop.  It is located on the island of Oahu because of its central location for shipping to all islands, as well as because the majority of the company's customer base for novelty party items is located on the island of Oahu.  Oahu is an ideal location to maximize the safety and efficiency of the company's operations.  It is also ideal for cost-reduction.

26.  Most importantly, the warehouse at 2720 Wai Wai Loop was modified as required by the City and County of Honolulu Fire Department and Building Department to meet all standards for a warehouse in which consumer fireworks would be stored.  On Oahu, the company has the ability to coordinate and ship product to stores at the latest possible date and in the fastest way possible.  This minimizes the amount of time that consumer fireworks products are sitting in the hands of our outer island shippers.

27.  American Promotional Events, Inc., N.W.'s shipper, Young Brothers, ships freight to all islands via their Oahu facility.  If there were no warehouse on the Island of Oahu and only on another island, that location would require the company to send out product to stores earlier so that the shippers may transfer and consolidate consumer fireworks shipments on Oahu or other islands.  There is no practical way to avoid shipping products between islands without going through Oahu.  There is no economical way to do so.

. . . .

30.  If the restrictions in the ordinance are enforced, the operation of the warehouse at 2720 Wai Wai Loop cannot occur as they have in the past.  Product would have to be shipped from the mainland facilities in Washington, Oregon or California through the Port of Honolulu to the other islands.  The cost of this distribution system would be substantial.  This would mean that the cost to the consumer of these products will be much higher and there will be a more limited variety of products available.

[Suppl. Mem. in Supp., Decl. of Chad Cloutier ("Cloutier Decl.").]

25

A.   <u>Likelihood of Success on the Merits</u>

1.   <u>Commerce Clause</u>

Plaintiff urges the Court to look at the "practical effect" of the challenged ordinance to determine whether it constitutes direct regulation of interstate commerce.  "The practical effect of the Fireworks Ordinance is that TNT cannot import consumer fireworks through Honolulu without exposing itself to criminal and civil penalties."  [Suppl. Mem. in Supp. at 5-6.]

Plaintiff also argues that the Fireworks Ordinance projects the City's regulatory scheme onto the Neighbor Islands and states in the continental United States where consumer fireworks are legal, and that the Commerce Clause protects against this "type of extraterritorial legislation."  [<u>Id.</u> at 6.]

Plaintiff argues that there is "no way TNT can get around the City and County of Honolulu in transporting product into the state."  [<u>Id.</u> at 7.]  It cannot relocate its warehouse to a Neighbor Island because of "the significant additional transportation costs . . . would be passed onto the consumers in the State of Hawaii through increased product prices.  Also, due to logistical or cost issues TNT would possibly stop selling product to some smaller retailers in Hawaii."  [<u>Id.</u> at 7-8 (citations omitted).]

26

### 2.   Article VIII of Hawai'i Constitution

Plaintiff asserts that the City's argument that Haw. Rev. Stat. § 132D-17.5 gives the City the power to regulate the import, transport, and storage of consumer fireworks is unreasonable and inconsistent with the statute's plain meaning. Plaintiff argues that, because § 132D-17.5 does not explicitly confer onto the City the power to regulate the import and storage of fireworks, the Legislature did not intend for a county to have such power.  Instead, the Legislature intended to allow a county to prohibit only the use of fireworks.  [Id. at 8-9.]

### 3.   Vague and Overbroad

Plaintiff believes that the City concedes that Plaintiff is likely to succeed on the merits of its third claim for relief, and that the City did not sufficiently address the claim because of the "inconsistent and arbitrary enforcement statements that have been presented to TNT."  [Id. at 11.] Plaintiff asserts that "the changing enforcement statements" and "internal inconsistencies in the Fireworks Ordinance are the exact type of conduct that the due process clause is designed to protect against."  [Id.]

### B.   Irreparable Harm

Plaintiff will suffer irreparable harm if the City is not enjoined because the HFD "could arbitrarily enforce the Fireworks Ordinance exposing TNT to civil and criminal

27

sanctions." [Id. at 11-12.]  Plaintiff also argues that it would

need to devise an alternative distribution system, resulting in

substantial costs, and would pass those costs on to the consumer.

It would also suffer from merchandise shortages and lost sales,

and the exact amount of damages would be difficult to calculate.

[Id. at 13.]

**V.    The City's Supplemental Opposition**

       **A.    Likelihood of Success on the Merits**

        In its supplemental memorandum in opposition filed

June 6, 2011, the City argues that the Commerce Clause cause of

action fails because the Fireworks Ordinance does not prohibit

shipping consumer fireworks to the Neighbor Islands via Honolulu

harbor.  "ROH § 20-6.2 does not prohibit shipments of consumer

fireworks from sitting in Honolulu harbor waiting for transfer to

the Neighbor Islands, or consumer fireworks passing through,

whether or not it is actually off-loaded." [Suppl. Mem. in Opp.

at 4-5.]  The Fireworks Ordinance "does not preclude the

importation of consumer fireworks into anywhere in the State of

Hawaii except Honolulu.  The flow of consumer fireworks into or

out of the State of Hawaii or between the various Neighbor

Islands is not affected by the Ordinance." [Id. at 10-11.]

        According to the City, the Commerce Clause does not

protect a particular method of operation in a retail market, and

that it "is only TNT Fireworks' own business practice that it

seeks to protect." [Id. at 9.]  The City cites Exxon Corp. v. Governor of Maryland, 437 U.S. 117 (1978), for the proposition that the Commerce Clause does not protect the methods and operations of a business from burdensome regulations; rather, the Clause protects the interstate market.  [Id. at 9-10.]

Next, the City argues that, because the Court must construe the Fireworks Ordinance narrowly and find any ambiguities in favor of constitutionality, the Court must find that the ordinance does not affect the shipping industry or intrastate commerce.  The City claims that the Fireworks Ordinance does not affect a matter of statewide concern, and therefore, does not run afoul of Article VIII of the State Constitution.  [Id. at 11.]

With respect to Plaintiff's claim that the Fireworks Ordinance is vague and overbroad, the City states that it "in not vague or overbroad, it contains a ban on consumer firework[s] on Oahu.  Nothing could be clearer."  [Id. at 12.]

### B.  Irreparable Harm and Balance of Equities

The City claims that Plaintiff will suffer no harm if the Court denies the Motion because HFD has granted an import license allowing Plaintiff to import consumer fireworks "to any of the Neighbor Islands."  [Id. at 12.]

The City also argues that the storage of consumer fireworks on Oahu poses a danger to its citizens, and that the

city should "not be required to be exposed to this risk when consumer fireworks are illegal in Honolulu.  Since TNT Fireworks will sell all of its consumer fireworks on the Neighbor Islands where such use is permitted, there is no detriment to storing [them] on the Neighbor Islands."  [Id. at 14.]

## VI.  June 13, 2011 Hearing

At the hearing on June 13, 2011, the Court heard additional testimony from: Keith Kiyotoki, a representative of interisland shipping line Young Brothers, Ltd.; Chad Cloutier, TNT's Director of Sales; and HFD Battalion Chief Socrates Bratakos.

### STANDARD

In Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008), the Supreme Court explained that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  So long as all four parts of the Winter test are applied, "a preliminary injunction [may] issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'"  Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010) (quoting Clear Channel

30

Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)).

## DISCUSSION

**I.    Likelihood of Success on the Merits**

The Court first addresses Plaintiff's likelihood of success on its three claims for relief.

**A.    First Claim For Relief: Commerce Clause**

The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art I, § 8, cl. 3. It also carries negative or implicit consequences for states or municipalities' authority to regulate interstate commerce, referred to as the "dormant Commerce Clause."

In reviewing challenges to local regulations under the Commerce Clause, the Ninth Circuit follows a two-tiered approach:

> [1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

S.D. Myers, Inc. v. City & County of San Francisco, 253 F.3d 461, 466 (9th Cir. 2001) (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579 (1986)).

In other words, there are two broad categories of
state regulations burdening interstate commerce:
(1) those that directly burden interstate commerce
or otherwise discriminate against out-of-state
interests; and (2) those that incidentally burden
commerce.  See, e.g., Kleenwell Biohazard Waste &
Gen. Ecology Consultants, Inc. v. Nelson, 48 F.3d
391, 395 (9th Cir. 1995).  Regulations falling
under the first category are generally struck
down, while those in the second group are reviewed
under a balancing test.  See, e.g., id.  Under
this balancing test, regulations may violate the
Commerce Clause if the burdens they impose so
outweigh the putative benefits so as to render the
regulations unreasonable or irrational.  See,
e.g., UFO Chuting of Haw., Inc. v. Smith, 508 F.3d
1189, 1196 (9th Cir. 2007).  In turn, this Court
previously explained that "[i]t is clear, however,
that the Supreme Court used the term 'direct' to
refer to regulations whose central purpose is to
regulate commerce, usually in order to benefit
local interests."  Nelson, 48 F.3d at 396.

Pac. Merch. Shipping Ass'n v. Goldstene, --- F.3d ----, No.

09-17765, 2011 WL 1108201, at *20 (9th Cir. Mar. 28, 2011).

As to the first prong, whether the local statute

"directly regulates," the Ninth Circuit explains that:

Direct regulation occurs when a state law directly
affects transactions that take place across state
lines or entirely outside of the state's borders.
The Supreme Court has emphasized that the
"practical effect" of a challenged statute is "the
critical inquiry" in determining whether that
statute constitutes direct regulation.  Healy v.
Beer Inst., 491 U.S. 324, 336, 109 S. Ct. 2491,
105 L. Ed.2d 275 (1989); see also Valley Bank [of
Nevada v. Plus System, Inc.], 914 F.2d [1186,]
1190 [(9th Cir. 1990)].  "[P]ractical effect . . .
must be evaluated not only by considering the
consequences of the statute itself, but also by
considering how the challenged statute may
interact with the legitimate regulatory regimes of
other States. . . ."  Healy, 491 U.S. at 336, 109
S. Ct. 2491[.]

32

S.D. Myers, Inc., 253 F.3d at 467 (some citations and quotation marks omitted).

First, the regulatory scheme at issue here does not appear to fall under the "direct" category of state regulations because the apparent purpose of the Fireworks Ordinance is to protect the health and well-being of the City's residents from the harmful effects of consumer fireworks. The Fireworks Ordinance's central purpose is not to regulate commerce. See Pac. Merch. Shipping Ass'n, 2011 WL 1108201, at *20 ("[T]he Supreme Court used the term 'direct' to refer to regulations whose central purpose is to regulate commerce, usually in order to benefit local interests." (citation omitted)). The otherwise even-handed and generally applicable Fireworks Ordinance also does not appear to discriminate against any out-of-state interests; that is, the City is not attempting to regulate conduct in another state. We are instead faced with a local Fire Code ordinance having only an incidental or indirect effect on commerce. The Court, therefore, must determine whether the burdens outweigh the putative benefits so as to render the Fireworks Ordinance unreasonable or irrational.

Second, the Court balances the burdens and benefits of the challenged ordinance. Plaintiff asserts that the City's legitimate public safety concerns do not justify the Fireworks Ordinance.

> Not every exercise of state power with some impact
> on interstate commerce, however, violates the
> Commerce Clause.  If the law "regulates
> even-handedly to effectuate a legitimate local
> public interest, and its effects on interstate
> commerce are only incidental," then the statute
> must be upheld "unless the burden imposed on such
> commerce is clearly excessive in relation to the
> putative local benefits."

Gravquick A/S v. Trimble Navigation Int'l Ltd., 323 F.3d 1219,

1224 (9th Cir. 2003) (quoting Pike v. Bruce Church, Inc., 397

U.S. 137, 142 (1970)).  Because the effects on interstate

commerce here appear to be incidental, the Fireworks Ordinance

must be upheld unless the burden is clearly excessive.

Plaintiff, the party challenging the validity of the Fireworks

Ordinance under the Commerce Clause, has the burden of

demonstrating that the burden on interstate commerce is clearly

excessive to the benefit.  See S.D. Myers, Inc., 253 F.3d at 471

(requiring the plaintiff to provide "specific details" as to how

the local ordinance affected interstate commerce).  The Court

finds that Plaintiff is not likely to meet its burden.

> [F]or a court to hold that a facially neutral
> statute violates the Commerce Clause, "the burdens
> of the statute must so outweigh the putative
> benefits as to make the statute unreasonable or
> irrational." Alaska Airlines, Inc. v. City of
> Long Beach, 951 F.2d 977, 983 (9th Cir. 1991)
> (holding that district court's close balancing of
> the burden on interstate commerce with the local
> benefits of the challenged ordinance was
> inappropriate).  The court continued to hold that
> a statute is unreasonable or irrational under this
> test "where the asserted benefits of the statute
> are in fact illusory or relate to goals that
> evidence an impermissible favoritism of in-state

34

industry over out-of-state industry."   Id.
Nat'l Ass'n of Optometrists & Opticians v. Brown, 709 F. Supp. 2d
968, 975-76 (E.D. Cal. 2010).

The Court agrees with Plaintiff that there is a burden
on the interstate and international shipment of consumer
fireworks into the State as a result of the Fireworks Ordinance.
The parties stipulated that under the State's "hub and spoke"
shipping model, goods imported into the State first arrive in
Honolulu before continuing on to the Neighbor Islands.   The
Fireworks Ordinance prohibits the importation of consumer
fireworks into Honolulu.   Thus, the Fireworks Ordinance, in
conjunction with the "hub and spoke" shipping model, works to
prevent the importation of consumer fireworks (other than
firecrackers).   The City's interest in the safety of its
citizens, however, reasonably outweighs any incidental impact on
interstate commerce.   See, e.g., Cascade Fireworks, Inc. v.
State, 738 P.2d 1013, 1015 (Or. App. 1987) (upholding state
regulation on the sale of fireworks and finding "the state's
interest in the safety of its citizens clearly outweighs any
incidental impact on interstate commerce").   The Court finds that
the Fireworks Ordinance's putative health and safety benefits are
not so outweighed by any burden on interstate commerce as to
render the ordinance unreasonable or irrational.

The Court also concurs with the City that it is

Plaintiff's business judgment and shipping industry strictures, and not the Fireworks Ordinance, which affect interstate commerce.  The prohibition on storing fireworks is limited to Oahu where Plaintiff has chosen to locate its warehouse, not to the Neighbor Islands.  Further, the shipping industry's practices affect all businesses and goods that travel interstate and intrastate equally, and according to the City "this is a cost of doing business in Hawaii and not a result of [the Fireworks Ordinance]."  [Suppl. Mem. in Opp. at 7-8.]

        The Court is mindful of the effect the Fireworks Ordinance and this Court's ruling may have on Plaintiff's operations within the State, including the possibility that Plaintiff will consider withdrawing from this market.  The Commerce Clause, however, does not protect Plaintiff's method of operation in a retail market.  The Supreme Court in Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 127 (1978), rejected the argument that the state interfered "with the natural functioning of the interstate market either through prohibition or through burdensome regulation."  The Exxon decision explains:

                We cannot, however, accept appellants' underlying
                notion that the Commerce Clause protects the
                particular structure or methods of operation in a
                retail market. . . .  [T]he Clause protects the
                interstate market, not particular interstate
                firms, from prohibitive or burdensome regulations.
                It may be true that the consuming public will be
                injured by the loss of the high-volume, low-priced
                stations operated by the independent refiners, but
                again that argument relates to the wisdom of the

                                    36

statute, not to its burden on commerce.

Id. at 127-28 (citations omitted); see also Nat'l Ass'n of Optometrists & Opticians, 709 F. Supp. 2d at 978 ("[P]laintiffs have not shown that these regulations are a burden to interstate commerce, but rather that they inhibit the business model plaintiffs find to be most profitable."); Wal-Mart Stores, Inc. v. City of Turlock, 483 F. Supp. 2d 987, 1012 (E.D. Cal. 2006) ("The Commerce Clause does not protect the particular structure or methods of operation of a retail market.  Nor does it give an interstate business the right to conduct its business in what it considers the most efficient manner, for the Constitution protects the interstate market, not particular interstate firms." (citation and quotation marks omitted)).

For these reasons, the Court FINDS that based on the current record before the Court, Plaintiff is not likely to succeed on the merits of its first claim for relief.

**B.  Second Claim for Relief: Article VIII of Hawai'i Constitution**

Article VIII, section 1 of the Hawai'i Constitution states: "The legislature shall create counties, and may create other political subdivisions within the State, and provide for the government thereof.  Each political subdivision shall have and exercise such powers as shall be conferred under general laws."  Plaintiff claims that the Fireworks Ordinance exceeds the authority granted to the City.

37

The Hawai'i Supreme Court has explained the relationship between the State and counties as follows:

> "Municipal corporations are solely the creation of the State.  As such[,] they may exercise only those powers which have been delegated to them by the State legislature." In Re Application of Anamizu, 52 Haw. 550, 553, 481 P.2d 116, 118 (1971) (citations omitted). See also Haw. Const. art. VIII, § 1 (1978) ("Each political subdivision shall have and exercise such powers as shall be conferred under general laws.").  Accordingly, if no provision of the Hawai'i Constitution or the HRS empowers the city to enact and enforce the ordinance, the ordinance is invalid.

State v. Medeiros, 89 Hawai'i 361, 365, 973 P.2d 736, 740 (1999).

The City asserts that the State delegated to the counties the full authority to ban fireworks in Haw. Rev. Stat. § 132D-17.5, which provides:

> (a) Nothing in this chapter shall be construed to supersede or in any manner affect a county fireworks ordinance; provided that the ordinance is at least as stringent in the control or prohibition of fireworks as the law under this chapter.
>
> (b) Nothing in this chapter shall prohibit a county from enacting ordinances that are more stringent in the control or prohibition of fireworks than this chapter.

Plaintiff, however, argues that, because § 132D-17.5 does not explicitly confer onto the City the power to regulate the import and storage of fireworks, the Legislature did not intend for a county to have such power; instead, the Legislature intended to allow a county to prohibit only the use of fireworks.  The Court disagrees and finds that the Fireworks Ordinance is an ordinance

that is "more stringent in the control or prohibition of fireworks" enacted within the City's power granted by Haw. Rev. Stat. § 132D.

Nor is the Fireworks Ordinance an invalid law of general application or statewide concern.  Plaintiff claims that the Fireworks Ordinance, which prohibits the import and storage of consumer fireworks on Oahu, is void on its face because it effectively regulates commerce between the islands, a matter of statewide concern.  A law of general application throughout the state is a law of statewide concern within the meaning of article VIII, section 6 of the Hawai'i Constitution.  Richardson v. City & County of Honolulu, 76 Hawai'i 46, 66, 868 P.2d 1193, 1213 (1994).  The Fireworks Ordinance regulates only the possession, import, storage, and licensing of fireworks within the City and County of Honolulu, and does not apply equally to the Neighbor Islands.

For these reasons, the Court FINDS that based on the current record before the Court, Plaintiff is not likely to succeed on the merits of its second claim for relief.

C.   **Third Claim for Relief: Vague and Overbroad Prohibitions**

Plaintiff brings this cause of action pursuant to Article I, section 5 of the Hawai'i Constitution, which states: "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the

39

laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry."

According to the Hawai'i Supreme Court:

When confronted with a constitutional challenge of a penal statute on the grounds of vagueness or overbreadth, we apply a number of principles on appeal.

First,

[t]he constitutionality of a statute is a question of law which is reviewable under the right/wrong standard.  Additionally, where it is alleged that the legislature has acted unconstitutionally, this court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt.  The infraction should be plain, clear, manifest and unmistakable. ....
Second, we construe penal statutes narrowly, considering them in light of precedent, legislative history, and common sense. . . .

Third, where possible, we will read a penal statute in such a manner as to preserve its constitutionality.

To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction.

Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve its overall purpose and to avoid

40

> absurd results.
>
> Put differently, a statute will not be held
> unconstitutional by reason of uncertainty if
> any sensible construction embracing the
> legislative purpose may be given it.  Mere
> difficulty in ascertaining its meaning, or
> the fact that it is susceptible to
> interpretation will not render it
> nugatory. . . .

State v. Bates, 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997)

(quoting State v. Gaylord, 78 Hawai'i 127, 137-38, 890 P.2d 1167,

1177-78 (1995)) (alterations in Bates) (some citations omitted).

With these principals in mind, the Court first examines

whether the Fireworks Ordinance is void for vagueness.  It is a

basic principle of due process that an enactment is void for

vagueness if its prohibitions are not clearly defined.  The

Fireworks Ordinance states, in pertinent part:

> (a) It shall be unlawful for any person to
> possess, use, explode or cause to explode any
> consumer fireworks within the city.
> . . . .
> (c) It shall be unlawful for any person to import,
> store, sell, keep or offer for sale, expose for
> sale any fireworks within the city.

ROH § 20-6.2.

The Court finds that the prohibitions set forth in the

Fireworks Ordinance are clearly defined and give a person of

ordinary intelligence a reasonable opportunity to know what is

prohibited, so that he or she may act accordingly.  See United

States v. Jae Gab Kim, 449 F.3d 933, 941-42 (9th Cir. 2006).  The

Court, however, is mindful that the City's statements regarding

41

enforcement at the June 13, 2011 hearing and in its filings may
have the tendency to create ambiguity.  For example, the City
explained that it would not prohibit the shipment of consumer
fireworks to the Neighbor Islands via Honolulu harbor.  The
parties do not dispute that Honolulu harbor is within the City
and County of Honolulu for purposes of the Fireworks Ordinance.
According to the City, HFD has recognized import licenses issued
by Neighbor Islands, "and has not precluded the transportation of
those fireworks through Honolulu Harbor, nor has HFD required a
separate import license be obtained from Honolulu County."  [Mem.
in Opp. at 15-16.]  This assertion was supported by the testimony
of Keith Kiyotoki, a sales and marketing manager for Young
Brothers, who testified at the hearing that importers of consumer
fireworks into the State of Hawai'i, other than Plaintiff, use
freight forwarders who act like consolidators.  The freight
forwarders pick up containers that have been shipped to Honolulu
harbor, take them to their warehouses to load fireworks along
with other cargo destined for a Neighbor Island, and then return
the containers to Young Brothers for shipment to the Neighbor
Island.  The City's witness, HFD Battalion Chief Bratakos,
confirmed that the fire department considers a container with
consumer fireworks that is taken by an importer or a licensed
bonded freight forwarder to a licensed bonded warehouse where the
contents are unpacked and are intended for immediate repackaging
and shipping to the Neighbor Islands as being part of the

42

shipping process.  If these consumer fireworks are held for a matter of days and up to a week, it would be considered temporary storage, and not as storage of consumer fireworks in violation of the Fireworks Ordinance.

Plaintiff, however, takes issue with Defendant's interpretation of the Fireworks Ordinance and argues that it conflicts with the ordinance's plain language.  Plaintiff fears that the Honolulu Fire Department may change this interpretation without notice and, as a result, Plaintiff is at risk of being cited or even criminally prosecuted.  Plaintiff, in essence, is not challenging the ordinance itself as being vague but, instead, is challenging the manner in which Defendant has chosen to enforce it.  An analogy, while imperfect, may be the state law against exceeding the posted speed limit.  If a vehicle is driven as little as one mile over the limit, the driver is in violation of the law.  There is nothing vague about it and the prohibitions are clearly defined.  A police officer or even a police department may, however, decide that citations for speeding will be issued only for drivers who are more than five miles above the speed limit.  This choice of enforcement does not render the law unconstitutionally vague.

While the Court shares some of Plaintiff's concerns with respect to the City's statements regarding the incidental importation of consumer fireworks destined for the Neighbor Islands, in light of the pre-enforcement nature of Plaintiff's challenge, the Court finds that the Fireworks Ordinance itself is

43

not unconstitutionally vague.  See Stoianoff v. State of Mont.,
695 F.2d 1214, 1222 (9th Cir. 1983) ("The possibility that the
Act will be enforced arbitrarily, is of no due process
significance unless the possibility ripens into a prosecution."
(citation omitted)).  Further, the Fireworks Ordinance does not
vest the City with "virtually complete discretion" to determine
whether the ordinance has been violated, and therefore, the
ordinance is not unconstitutionally vague.  See Kolender v.
Lawson, 461 U.S. 352, 359 (1983); see also Village of Hoffman
Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 503
(1982) ("The language of the ordinance is sufficiently clear that
the speculative danger of arbitrary enforcement does not render
the ordinance void for vagueness.").

     The Court next turns to Plaintiff's overbreadth
challenge.  "The doctrine of overbreadth, although closely
related to a vagueness claim, is distinct in that while a statute
may be clear and precise in its terms, it may sweep so broadly
that constitutionally protected conduct is included in its
proscriptions."  Tause v. State, Dep't of Labor & Indus.
Relations, 113 Hawai'i 1, 28 n.27, 147 P.3d 785, 811 n.27 (2006)
(quoting State v. Bui, 104 Hawai'i 462, 465, 92 P.3d 471, 474
(2004)).  Plaintiff does not sufficiently identify any
constitutionally protected conduct included within the Fireworks
Ordinance's proscriptions.  It argues only that the ordinance is

44

overbroad because it would punish the "innocent" and
"constitutionally protected behavior" of importing and supplying
fireworks to the Neighbor Islands.  The Court disagrees and finds
that the Fireworks Ordinance does not punish the importing and
supplying of consumer fireworks to the Neighbor Islands.

The primary compliance hurdle for Plaintiff appears to
be its need to store and repackage consumer fireworks in between
the Neighbor Islands' legal fireworks selling seasons.  Plaintiff
has chosen to centrally locate its warehouse in Honolulu, which,
when combined with the unique nature of the consumer fireworks'
market (that is, that the retail season is essentially two weeks
during the Fourth of July and two weeks during New Year's Eve)
and the State's shipping practices, works to Plaintiff's
disadvantage under the new Fireworks Ordinance.  This combination
of factors does not render the law unconstitutionally vague or
overbroad.  Further, legislative enactments are presumptively
constitutional, "and the party challenging a statute has the
burden of showing the alleged unconstitutionality beyond a
reasonable doubt."  Bui, 104 Hawai'i at 466, 92 P.3d at 475
(citation and quotation marks omitted).  As explained above, at
this point, Plaintiff has not demonstrated that the Fireworks
Ordinance is unconstitutionally vague or overbroad.

For these reasons, the Court FINDS that on the current
record before the Court, Plaintiff is not likely to succeed on

the merits of its third claim for relief.

## II.  __Irreparable Harm__

The Court next turns to the analysis of whether Plaintiff will suffer irreparable harm in the absence of an injunction.  The primary injuries alleged by Plaintiff relate to monetary harm (e.g., that it would "have to abandon its $750,000 investment in the Warehouse distribution facility [and] devise an alternative distribution system that somehow complies with the Fireworks Ordinance at substantial costs" [Suppl. Mem. in Supp. at 13]).  Typically, monetary harm does not constitute irreparable harm.  L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).  This is so because "economic damages are not traditionally considered irreparable *because the injury can later be remedied by a damage award*." Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 852 (9th Cir. 2009).

Plaintiff, however, also alleges constitutional violations.  "Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." Nelson v. NASA, 530 F.3d 865, 882 (9th Cir. 2008), reversed on other grounds, 131 S. Ct. 746 (2011).  The Court, however, has determined that Plaintiff is not likely to succeed on its claims of constitutional violations, and without more, the Court will not presume irreparable harm in

this instance.

Plaintiff further alleges it will suffer loss of business reputation and goodwill amongst the general public and its customers.  At the June 13, 2011 hearing, TNT's Director of Sales, Chad Cloutier, testified that TNT's business reputation would be effected if it were unable to get consumer fireworks to its Neighbor Island Customers in time for the upcoming Fourth of July season.  He also said it could possibly endanger TNT's national contracts.  Injuries to goodwill and business reputation are generally considered to be intangible and, as a result, irreparable.  See, e.g., Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) ("[W]e have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); MySpace, Inc. v. Wallace, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

Plaintiff has not, however, produced any evidence of actual loss of goodwill or business reputation, but speculated that it will suffer loss if it is found to be in violation of the Fireworks Ordinance or unable to timely deliver shipments to Neighbor Island retailers.  "Although the loss of goodwill and reputation are important considerations in determining the existence of irreparable injury, there must be credible and

admissible evidence that such damage threatens Plaintiff's businesses with termination." Dotster, Inc. v. Internet Corp. For Assigned Names & Nos., 296 F. Supp. 2d 1159, 1163-64 (C.D. Cal. 2003).

The conclusory statements provided at the June 13, 2011 hearing alone cannot support a finding of irreparable injury for the issuance of a preliminary injunction at this stage. See, e.g., Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985) (declarations of plaintiff's executives detailing the disruptive effect of defendant's exclusive contracts on plaintiff's business could not support the issuance of a preliminary injunction because they were "conclusory and without sufficient support in facts"); Goldie's Bookstore, Inc. v. Sup. Ct., 739 F.2d 466, 472 (9th Cir. 1984) (reversing issuance of preliminary injunction where district court had determined that plaintiff "would lose goodwill and 'untold' customers" because the finding was not based on any factual allegations and was speculative). In light of the speculative and tenuous evidence of possible loss of goodwill or business reputation,[2] the Court cannot find that Plaintiff will

---

[2] "[T]he court's findings of fact and conclusions of law with regard to the preliminary injunction are not binding at trial. Based, as they usually are, on incomplete evidence and a relatively hurried consideration of the issues, these provisional decisions should not be used outside the context in which they originally were rendered." 11A Charles Alan Wright, Arthur R.
(continued...)

48

suffer irreparable harm if an injunction is not granted.

## III. **Balance of Equities**

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir. 1999). It appears that the primary hardship that denying the injunction would cause Plaintiff is the loss of profits stemming from its business. Although Plaintiff argues that the balance of equities tips in its favor because of the importance of protecting its constitutional right to engage in interstate commerce, the Court does not find that Plaintiff is likely to succeed on the merits of this claim. The Court greatly sympathizes with Plaintiff, and acknowledges that the Fireworks Ordinance deals a heavy blow to Plaintiff. Financial hardship will be great because of the investment in its Honolulu warehouse and inventory, the cost of relocating to a Neighbor Island, and the additional shipping expense caused by the "hub and spoke" system used by the local shippers.

On the other hand, according to the City, granting the injunction would require HFD to monitor consumer fireworks stored on Oahu, shipped out to the Neighbor Islands, and returned after

---

[2](...continued)
Miller, Mary Kay Kane, Richard L. Marcus, Federal Practice & Procedure § 2950 (2d ed.).

the selling season.   The City argues that its citizens should not

be exposed to this risk when consumer fireworks are illegal on

Honolulu, and that, because consumer fireworks are legal on the

Neighbor Islands, there is no detriment to Plaintiff storing them

there.   After careful thought and review of the record, the Court

FINDS that Plaintiff has not established that the balance of

hardships tips in its favor.

**VI.   <u>Public Interest</u>**

   With respect to the public interest inquiry:

   The plaintiffs bear the initial burden of
   showing that the injunction is in the public
   interest.  <u>See</u> <u>Winter</u>, 129 S. Ct. at 378.
   However, the district court need not consider
   public consequences that are "highly speculative."
   In other words, the court should weigh the public
   interest in light of the likely consequences of
   the injunction.   Such consequences must not be too
   remote, insubstantial, or speculative and must be
   supported by evidence.

   Finally, the district court should give due
   weight to the serious consideration of the public
   interest in this case that has already been
   undertaken by the responsible state
   officials . . . who unanimously passed the rules
   that are the subject of this appeal.  <u>See</u> <u>Golden</u>
   <u>Gate Rest. Ass'n</u>, 512 F.3d at 1127 ("The public
   interest may be declared in the form of a
   statute." (internal quotation marks omitted)); <u>see</u>
   <u>also</u> <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 318, 63
   S. Ct. 1098, 87 L. Ed. 1424 (1943) ("[I]t is in
   the public interest that federal courts of equity
   should exercise their discretionary power with
   proper regard for the rightful independence of
   state governments in carrying out their domestic
   policy." (internal quotation marks omitted)).

<u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1139-40 (9th Cir. 2009)

(some citations and quotation marks omitted).  The public interest inquiry primarily addresses the impact on non-parties rather than parties.

Plaintiff argues that Neighbor Island retailers are expecting fireworks for the Fourth of July to be delivered on time, and that customers statewide expect to be able to use firecrackers during the lawful fireworks season and for cultural purposes.  The City contends that public safety and the City Council's legislative determination to ban consumer fireworks weigh more heavily in favor of the public interest.  The City avers that the majority of fireworks imported into the State are consumer fireworks, and that the majority of fireworks injuries statewide occur in the City and County of Honolulu.  [Perry Aff. at ¶ 21, 23.]  In light of all the facts and circumstances discussed above, the Court FINDS that Plaintiff has not established that the public interest requires entry of a permanent injunction at this point.

## V.   <u>Summary of Analysis of Injunction Factors</u>

In sum, the Court concludes that Plaintiff has not demonstrated a high likelihood of success on the merits or irreparable harm, and that the balance of equities and consideration of the public interest do not require an injunction at this time.

<u>CONCLUSION</u>

51

On the basis of the foregoing, American Promotional Events, Inc. – Northwest, doing business as TNT Fireworks', Motion for Preliminary Injunction, filed on April 11, 2011, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 17, 2011.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**AMERICAN PROMOTIONAL EVENTS, INC. – NORTHWEST DBA TNT FIREWORKS V. CITY & COUNTY OF HONOLULU; CIVIL NO. 11-00242 LEK-RLP; ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**